UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>V. )<br>)<br>EZEKIEL AKANDE, M.D., )<br>)<br>Defendant. )<br>) | Civil No. 6:17-cr-0013-GFVT-HAI<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Generally, a federal criminal defendant in the United States is charged with criminal activity by way of an indictment returned in open court by a grand jury. Such an indictment must give a defendant notice of the crimes charged so he or she can adequately prepare a defense. If this charging document suffers from certain defects that do not adequately give the defendant notice, Federal Rule of Criminal Procedure 12(b) allows for the dismissal of the indictment prior to trial. The Defendant in this case, Ezekiel O. Akande, M.D., seeks relief from the Court under this Rule. Dr. Akande has moved the Court for dismissal of Count 4 of the Indictment returned against him on the ground that Count 4—which charges Dr. Akande with health care fraud—fails to allege a violation of law. Because the Court finds the Indictment complies with the requirements of the United States Constitution, Dr. Akande's Motion to Dismiss [R. 47] will be **DENIED**.

## I

On February 23, 2017, a Federal Grand Jury returned an Indictment against Ezekiel O. Akande, M.D. [R. 1.] This Indictment charged Dr. Akande with eight separate counts of criminal activity: unlawful distribution and dispensation of Schedule II controlled substances, unlawful distribution and dispensation of Schedule III controlled substances, operating premises involved in drug activity, health care fraud, and four counts of engaging in monetary transactions in criminally derived property over $10,000. *Id*. Here, Dr. Akande only challenges Count 4: Health Care Fraud in violation of 18 U.S.C. §§ 1347 and 1349. [R. 47.] The Government contends that, from March 2012 through May 2016, Dr. Akande did "knowingly and willfully, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with others" in order to "knowingly and willfully execute a scheme and artifice to defraud" Medicare and Medicaid. [R. 1 at 10.] Allegedly, Dr. Akande did so in order "to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property" of Medicare and Medicaid "in connection with the delivery of and payment for health care benefits, items, and services." *Id*.

## II
### A

Federal grand jury indictments have a purpose. As the Supreme Court explained in *Russell v. United States*, our use of the indictment today is rooted in the guarantees set forth in the Fifth and Sixth Amendments to the United States Constitution. *See* 369 U.S. 749, 760–61 (1962). The Fifth Amendment provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S.

CONST. amend. V. And according to the Sixth Amendment, "In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. CONST. amend. VI. Out of this constitutional framework comes two criteria for federal indictments: First, an indictment must set forth the elements of the offense charged, thereby giving notice to a defendant of the accusations he or she must face. Second, an indictment must be sufficiently specific so that a defendant may plead double jeopardy, if charged in a subsequent proceeding with the same crime based on the same facts. *See Russell*, 369 U.S. at 763–64; *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992). With these requirements in mind, the Court considers whether the Indictment returned against Dr. Akande passes constitutional muster.

Dr. Akande's central challenge to Count 4 is that medical necessity is a matter of opinion, not fact, and therefore cannot be the basis of a fraud claim. [R. 47-1 at 1.] Additionally, he states that 18 U.S.C. §§ 1347 and 1349 unconstitutionally vague, and thus, the application these sections would violate Due Process. *Id*. at 6. These two separate arguments will be addressed in turn.

**B**

The first Constitutional requirement is satisfied because Count 4 of the Indictment adequately informs Dr. Akande of the criminal charges brought against him.[1] *See Russell v.*

---

[1] Dr. Akande is charged with violations of 18 U.S.C. §§ 1347 and 1349: committing health care fraud and conspiracy to commit health care fraud. Section 1347 reads, in relevant part:
    **(a)** Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice--
    **(1)** to defraud any health care benefit program; or
    **(2)** to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be

3

*United States*, 369 U.S. 749, 763 (1962). The Indictment specifically states Dr. Akande committed health care fraud and outlines the precise way the Government alleges that he did so within a reasonable date range: from March 2012 through May 2016, Dr. Akande "submitted and caused to be submitted to Medicare and Medicaid claims for urine drug screens that were not medically necessary;" he "submitted or caused to be submitted to Medicare and Medicaid claims for services that were not medically necessary, in that the patients had no legitimate medical need for treatment, but rather sought access to controlled services;" and finally, Dr. Akande "submitted and caused to be submitted to Medicare and Medicaid claims for medical services, despite evidence that the beneficiaries were not seeking medical treatment, but instead were diverting the controlled substances." [R. 1 at 11–12.] He allegedly did this in order to defraud Medicare and Medicaid. *Id*. at 10. The Indictment clearly and adequately informs Dr. Akande of the crimes with which he is charged, such that he and counsel can prepare a defense to the Government's allegations.

Further, the Indictment satisfies the second Constitutional requirement, as it is sufficiently specific to allow Dr. Akande to plead double jeopardy in a future proceeding. *Russell*, 369 U.S. at 764. The Indictment sets forth the dates of the health care fraud (on or about March 1, 2012, through on or about May 1, 2016) and where the crime occurred (in Pulaski

---

fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both.
**(b)** With respect to violations of this section, a person need not have actual knowledge of this section or specific intent to commit a violation of this section.
18 U.S.C. § 1347. Section 1349 reads, "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

County, Kentucky). [R. 1 at 10.] Based on this charging document, Dr. Akande should be able to raise a double jeopardy defense should he be charged with a similar crime at any future point in time.

Dr. Akande relies heavily on *United States v. Paulus*, No. CR 15-15-DLB-EBA, 2017 WL 908409 (E.D. Ky. Mar. 7, 2017), and several other cases outside this circuit. In *Paulus*, the jury found a cardiologist guilty of health care fraud for billing for unnecessary cardiac procedures. Following a lengthy trial, the district court judge determined there was insufficient evidence to sustain the verdict and granted the defendant's Rule 29 motion. Recognizing that the Sixth Circuit has deemed it "fundamental that a false statement is a factual assertion," the *Paulus* court found that the Government failed to prove Dr. Paulus made any false statements worthy of the jury's fraud conviction. *See* 2017 WL 908409 at *5. Specifically, the *Paulus* court considered whether the degree of stenosis present in Dr. Paulus's patients—a measurement used to justify the allegedly unnecessary cardiac procedures he performed—was "an *objective fact*, which can be false, or a *subjective opinion*, which is not subject to proof or disproof." *Id.* at *6 (emphasis in original). Considering this, the court went on to conclude the Government had failed to prove beyond a reasonable doubt that Dr. Paulus "knowingly and willfully exaggerated the extent of his patients' stenosis in their medical records, for the purpose of defrauding a health care benefit program." *Id.* The trial evidence showed that estimating the degree of stenosis is a very imprecise exercise for health care providers, and expert witnesses varied significantly in their observations and assessments of the appropriate treatment under the circumstances. *Id.* at *7–*9. Accordingly, the court concluded that the expert testimony and angiogram evidence did not permit a rational jury to convict Dr. Paulus of making a false statement, and the court further

5

determined the other circumstantial evidence introduced at trial was, alone, insufficient to sustain the conviction. *Id.* at *9–*16. As *Paulus* notes, "the statutes targeting health care fraud do not criminalize subjective medical opinions where there is room for disagreement between doctors. Instead, criminal liability only attaches . . . if the Government proved, beyond a reasonable doubt, that [the Defendant] knowingly and willfully exaggerated the extent of his patients' stenosis in their medical records, for the purpose of defrauding a health care benefit program." *Id.* at *6.

After the district court decided *Paulus*, the Sixth Circuit resolved *United States v. Persaud*. 866 F.3d 371 (6th Cir. 2017). In *Persaud*, Dr. Harold Persaud was accused of ordering unnecessary tests for his cardiology patients, systematically overestimating the stenosis detected in those patients, and "upcoding" medical bills in order to increase his reimbursement amount from insurers. *Id.* at 373–74. The jury found him guilty of health care fraud, thirteen counts of making false statements relating to health care, and money laundering. *Id*. Dr. Persaud appealed his conviction, arguing that the government presented insufficient evidence. *Id*. at 379. The Sixth Circuit rejected this argument, stating, "The jury, not this court, is intended to weigh the import of expert testimony and balance it against the weight of the defense's evidence." *Id*. at 383.

When Dr. Akande filed his motion to dismiss, *Persaud* had been determined, but *Paulus* was still pending appeal at the Sixth Circuit. Now, however, the Sixth Circuit has overruled the district court in *Paulus*, finding that in circumstances of health care fraud, "it is up to the jury— not the court—to decide whether the government's proof is worthy of belief." *United States v. Paulus*, No. 17-5410, 2018 WL 3097952, at *9 (6th Cir. June 25, 2018) (citing *Persaud*, 866

F.3d at 383). Counter to what Drs. Paulus and Persaud claimed, and what Dr. Akande now asserts, "The degree of stenosis *is* a fact capable of proof or disproof." *Paulus*, 2018 WL 3097952, at *9. A doctor who misrepresents his medical findings has told a lie, and doing so in order to bill for additional or more expensive procedures has committed fraud. *Id*.

Even if the Sixth Circuit's opinion did not foreclose Dr. Akande's motion, the Court did not follow the district court *Paulus* decision in *United States v. Bertram*, No. 3:15-cr-14-GFVT-REW, 2017 WL 4355679 (E.D. Ky. Sept. 29, 2017) or in *United States v. Chalhoub*, No. 6:16-cr-00023-GFVT-HAI, R. 80 (E.D. Ky. Feb. 16, 2018). Regardless, Dr. Akande continues to argue that *Paulus* prevents criminal prosecution when "(a) there are no objective misstatements of fact made about the patient's condition or the services provided, and (b) qualified experts disagree on whether the procedure was medically necessary," [R. 47-1 at 6.] However, as this Court has held before, and as *Paulus* also held, these are questions of fact for the jury.

Contrary to Defendant's assertions, *Paulus* did not find that fraud cannot exist under 18 U.S.C. § 1347, but only that it did not exist in *the specific set of facts* before that court. [*See* R. 47-1 at 5–6.] As in *Paulus*, Dr. Akande is charged with misrepresenting facts in order to bill Medicare and Medicaid for unnecessary treatments. *See Paulus*, No. 17-5410 at *10. The jury will determine whether Dr. Akande knew the applicable standards but knowingly and willfully disregarded those standards to conduct unnecessary urine drug screens or to provide needless controlled substances. His intent is what matters.

The indictment here is sufficient to put Dr. Akande on notice of the charges against which he must defend. Should the evidence prove Dr. Akande did not have the requisite *mens*

7

*rea*, the jury will return an appropriate verdict. The Indictment in this case has served its purpose and consequently is not fatally defective.

C

Next, Dr. Akande argues 18 U.S.C. §§ 1347 and 1349, the statutes criminalizing health care fraud, are unconstitutionally vague, and thus, violate Due Process. [R. 47-1 at 6.] "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (quoting *United States v. Williams*, 53 U.S. 285, 340 (2008)). The statute is analyzed "as applied to the particular facts at issue," and not whether the statute is vague as applied to a hypothetical situation or the situation of others. *Id*.

Dr. Akande states, "Section 1349, and its underlying substantive statute, Section 1347, do not provide fair notice to providers because the concept of 'medically necessary' services is only vaguely defined by the Medicare regulations and rests completely upon medical opinions." [R. 47-1 at 7.] He alleges that "medical providers are not provided fair notice of the criteria for determining when their choice of medical treatment for their patients falls so far outside of acceptable criteria that it is criminal and fraudulent to seek reimbursement for those services." *Id*.

Sections 1347 and 1349 pass Constitutional muster, and neither section violates due process. A person of ordinary intelligence can understand that criminal charges may be brought if they "knowingly and willfully execute[], or attempt[] to execute, a scheme or artifice—. . . to defraud any health care benefit program." 18 U.S.C. § 1347; *see Humanitarian Law Project*,

8

561 U.S. at 18. Similarly, a person of ordinary intelligence can understand that criminal charges may be brought against anyone who either attempts or conspires to defraud a health care benefit program. 18 U.S.C. § 1347; *see Humanitarian Law Project*, 561 U.S. at 18. Though there are countless precise ways in which doctors might violate these statutes, a doctor can understand that he or she may be charged under this statute if he or she knowingly and willfully plans, attempts, or conspires to defraud insurance providers to obtain benefits that he or she is not entitled to have.

Likewise, Dr. Akande's argument that this statue is standardless is without merit. [*See* R. 47-1 at 9.] It is unreasonable that the Government should lay out precise guidelines for each type of health care fraud and how it might be committed, as no statute could encompass every type of criminal activity that might occur. But, without considering existing medical literature, Dr. Akande, as a physician, has some sort of internal or external guide that he uses to assess when a patient needs controlled substances or when to perform urine drug screens. The criminal act allegedly occurred when Dr. Akande billed for a procedure that *he knew* was not necessary. The jury is best suited to determine whether clear guidelines existed, whether Dr. Akande was aware of those guidelines, and whether he purposefully disregarded them in order to defraud various insurance providers.

In *Women's Med. Prof'l Corp. v. Voinovich*, the Sixth Circuit held that a certain bill restricting abortion was unconstitutional. 130 F.3d 187, 204 (6th Cir. 1997). The Sixth Circuit emphasized that the lack of any scienter requirement was the significant Constitutional violation of this particular abortion bill. *Id*. at 203–05. The scienter requirement "requires that a defendant have some degree of guilty knowledge or culpability in order to be found criminally

9

liable for some conduct." *Id*. at 203.  Section 1347 has that scienter requirement, which will guide the jury as they decide whether Dr. Akande knowingly and willfully committed health care fraud.  18 U.S.C. § 1347 ("[w]hoever **knowingly and willfully** . . .).

Sections 1347 and 1349 survive a due process evaluation because they adequately inform "a person of ordinary intelligence . . . of what is prohibited" and they are not "so standardless that [either statute] authorizes or encourages seriously discriminatory enforcement. *Humanitarian Law Project*, 561 U.S. at 18.  Dr. Akande was adequately informed that if he were to conduct urine drug screens, provide treatment, or prescribe controlled substances that he knew were not necessary, he could be prosecuted under these statutes.  Accordingly, there is no due process violation.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Ezekial O. Akande's Rule 12(b) Motion to Dismiss Count 4 of the Indictment [**R. 47**] is **DENIED**.

This the 3d day of June, 2018.

Gregory F. Van Tatenhove
United States District Judge